May it please the Court, my name is Kara Hartzler and I represent the petitioner Manuel Olivas-Motta. This case confronts the critical issue of whether an immigration judge may rely on documents outside of the record of conviction to find that a non-citizen has been convicted of a crime involving moral turpitude. In 2008, the Attorney General overturned... Is there some law one way or the other, some controlling authority on this? I didn't actually find any. On the question of what convicted of means? Well, on the Shepard-Taylor issue of what can be considered. Since 1914... To me it's perfectly plain that for other purposes a police report is not cognizable evidence to determine what crime the person committed. And I'm not clear on whether there is controlling authority on whether a police report can be considered in determining what crime a person committed for this statute. There is no controlling issue or there is no controlling case law as it applies to crimes involving moral turpitude, Your Honor. That's correct. Is there some reason to think that crime of moral turpitude should be treated differently from any other crime? It should be treated exactly the same. And the case law in this area... What's the argument that it should be treated differently and then what's your response? The argument that the government has put forward, I would say that there are two primary arguments that the government has put forward. One, the government has said that this statute is ambiguous. Therefore, we should defer to the Attorney General's decision in Silva-Trevino. The problem with that argument is the government is looking at the wrong part of the operative clause. What controls for this purpose is not the definition of a crime involving moral turpitude. In Marmolejo-Campos, this Court said we defer to the substantive definition of a crime involving moral turpitude. But for purposes of this case, what controls is the language convicted of. And in the Supreme Court decision in Carracheri-Rosendo last year, the Supreme Court clearly defined convicted of to mean this is not something you can consider based on police reports or underlying conduct or what could have been charged. What's controlling here is what was the person convicted of? What's the factual basis to which she pleaded guilty? What is the particular count to which she pleaded guilty? What was the factual finding of a jury? And in this case, that is not anything that's in the record. There's nothing in the record. Both sides are very clear that this turns solely on the question of whether you can consider the police reports. And there's never been any case law saying that you can do that in the case of a crime involving moral turpitude. So that's the first argument that the government would put forth. The second argument that the government would likely put forth is to say, well, this is a case that is controlled by the Supreme Court's which is a Supreme Court decision where there was a circumstance-specific approach that was put forward. And they said, well, in this case, you can look at the pre-sentence report. You can go outside of the record of conviction. In response to that, we would say, no, actually, Nijawan does not control here for three very important reasons. First of all, Nijawan was a situation that was driven by consideration that's not present here, namely that the to stick to the categorical approach would essentially mean that you are rendering the statute meaningless and it would frustrate congressional intent. That consideration is not present here because we have a statute under which tens of thousands of people have been deported. And so there's no similar concern that if we stick to the categorical approach that this statute is going to be rendered meaningless. Another reason- Are you saying you can't use the modified categorical approach at all? No, I'm not saying that at all, Your Honor. You can certainly use the modified categorical approach. You just can't go to step three under Silva-Trevino, which allows you to consider police reports. Under the modified categorical approach, you can certainly consider the charging document if it's clear to you. Your argument is you can use the modified categorical approach in its ordinary function. Exactly. In its ordinary fashion. Exactly. You just can't go beyond it. Yeah. The three arguments that we would put forward in response to this is that, first of all, as I've discussed briefly, the Attorney General's decision in matter of Silva-Trevino is basically a situation where the Attorney General is violating the plain language of the statute, plain and simple. Congress was very clear when it said convicted of a crime involving moral turpitude. And one of the things that the Supreme Court said in Carter v. Sando is that we define convicted of to mean what did you plead guilty to, not what are the underlying facts. Another reason that we know that Congress is very clear on this issue is because Congress set up a very comprehensive statutory scheme in which there's a lot of provisions where Congress said convicted of, and there's also provisions where Congress did not say convicted of. For instance, if you have a false claim to citizenship, if you are accused of smuggling, those are the situations where the Congress set up a situation where the immigration judge could hold a small mini-trial and make findings of fact and consider any kind of evidence that the immigration judge wanted to. So the fact that Congress knew how to set up that situation where an immigration judge could make findings of fact in terms of a ground of removability demonstrates that the same issue is not present here. Congress knew how to limit it to a conviction, and they did that here. The third point that I would like to bring up to the Court is this issue of due process. I'm not sure that it's that easy to get rid of Nijawan v. Holder. The question is whether the word involving modifies the convicted of or whether it modifies the crime. And I think that that's an argument that the government has raised. Our response to that would be look to the Supreme Court's decision in James. In James, the Supreme Court was considering the exact same question, where the statute for sentence enhancement said if there is a crime that involves a serious risk of physical injury. And the Supreme Court said no. Even though you're using the word involves, it's still the categorical approach. The other thing I would point out to you. Give me that case name again. That was James v. United States. Got it. So there's nothing about the word involves that necessarily says you can go outside of the record of conviction. Your argument basically is crime involving moral turpitude should be taken as a single phrase simply describing the crime. Exactly. And there are crimes that involve moral turpitude and there are crimes that do not involve moral turpitude. But involving moral turpitude is part of the definition of the crime itself. Exactly. That's your argument. Yeah. And courts have defined crime involving moral turpitude as a generic term of art for nearly a century. Right. And we've never figured out what the definition actually means. That's still a thorny issue. But we've treated it largely as that's a category of crime. That's exactly right, Your Honor. And another reason that we can distinguish it from Nijawan is in Nijawan you had a multi-part statutory provision. In other words, there was a fraud and element crime involving or in which the person was in which the person had an amount of $10,000 or more. So in other words, what the Supreme Court said is you still apply the categorical approach to that first part of the provision, to that first clause. What you don't apply the categorical approach to is that second part of the clause that modifies the first part. So in other words, there it made sense to use convicted of and then have the second part modify that. Right. Here we only have this one generic term of art, crime involving moral turpitude. But what we could do is say, yeah, you can look at whether this particular crime and not just the statutory crime involve moral turpitude. That's what Nijawan v. Holder holds. But you're still limited to the Taylor approach and what evidence is reliable enough to look at for that purpose. Is that basically the way to look at it? Just to be clear, Nijawan did actually dealt with a completely different provision. It was an aggregated felony provision. So it did not in any way deal with the issue of crimes involving moral turpitude. I know that. Yeah. I'm sorry. I just wanted to clarify. And I apologize. Could you repeat the rest of your question, Your Honor? Okay. If I'm – if I've got this right, your argument would be conceding that Nijawan holds, that you can look at the particulars of the crime committed and not just the statutory definition of the crime to decide whether it involves moral turpitude. You still have to follow Taylor and Shepard to decide what evidence is reliable enough to use in making that determination. That's correct, Your Honor. I mean, we would basically say that Nijawan doesn't apply to crimes involving moral turpitude because, as the Eleventh Circuit pointed out in a decision issued yesterday, and I don't know if the Court received my 28-J letter, they said Nijawan, the aggregated felony – Why do you have a problem with Nijawan? I mean, it says you can look at the sentencing-related material, the defendant's stipulation, that it involved over $10,000 in the restitution order, which is part of a judgment. That's not like police reports. I mean, when I used to do criminal defense, a lot of what you do is attack the police report. Well, actually – Sometimes they're inaccurate or careless or done in a rush. And then as a district judge, I get cases all the time where it turns out to be more complicated than what the police report says. It's just – Actually, Your Honor, I mean, the Taylor and the Shepard approach have long held that you cannot consider police reports. I know that. I'm sorry, pre-sentence reports as part of those, or any sort of restitution or anything like that. It has to be stuck to the very formal record of conviction. And so in this case, you know, for instance, there – True, yeah. In other words, we would consider that as part of the Step 3 analysis as being akin to the police report. And that's, I think, based on a lot of case law from the circuits in the Supreme Court. To follow up with my final point, what I would say is that essentially one of the biggest issues with civil tribunal is that it violates basic notions of due process and fundamental fairness. One of the things that we understand that the Attorney General is trying to do is trying to bring some much-needed consistency to this whole question of a crime involving moral turpitude and what it means. It was well-intentioned. The problem is that, in effect, what the Attorney General did was make the system a lot worse. The Attorney General opened the floodgates so that now you have 235 different immigration judges all using 235 different documents and witnesses. And what that results in is just a complete lack of consistency and predictability. And one of the reasons that that's a real problem is because last year the Supreme Court found in PdV, Kentucky, that you need to have defense counsel affirmatively advising on the immigration consequences of criminal convictions. So when you have a system where Judge A maybe looks at this report and Judge B listens to this witness and you have dozens and dozens of people who are all charged and convicted of the same crime, but then some are crimes involving moral turpitude and some aren't, it makes it extremely difficult for defense counsel to give any sort of clear indication of whether it's going to have immigration consequences or not. And that was noted by this court in Hernandez-Cruz, which stated that if you allow the underlying facts to be considered, you're essentially making a mockery of PdV, Kentucky. So that's a huge due process concern. I don't really see a problem with having the underlying facts considered. My attention is more drawn to the issue of what's a good enough indicator of what the underlying facts are. I understand that's not the focus you wish to have. No, it's not. And, Your Honor, frankly, one of the issues with the underlying facts is that the underlying facts are not good enough. I mean, I don't really have a problem with saying pre-sentence reports are good enough, but not police reports, because there's an adversary process for correcting errors in pre-sentence reports. I think it all comes down to what was the person convicted of. And I'm not entirely sure that pre-sentence reports would always get to that. But your fight is not over the distinction between pre-sentence reports and police reports. No. Your fight is to whether the categorical or the modified categorical approach applies when you're dealing with a CIMT. And you say we have to do a modified categorical approach, looking only at reliable documents. We can fight later about what documents are reliable. But that's not what you're fighting about. That's exactly correct. Yes, Your Honor. Yes. You know, another issue that brings up. . . Your only problem here is the police report, though, right? Our problem is the police report, but I think Silva-Trevino could extend to a lot of other situations. It could extend to. . . Well, let me put it this way. Not your problem, because you may have other people in your law practice, but I mean Olivas-Mata's problem. Yes. It's only with the police report. It's the police report. So Olivas-Mata is totally indifferent to whether pre-sentence reports can be considered. That's right. That's correct. And in this case, the judge. . . You're presenting Olivas-Mata. That's right. But when you say our problem, you mean my problem as opposed to his problem. That's right. That's exactly right. Mr. Olivas-Mata's problem is that the judge relied on the police reports, and I don't think the record is. . . If we tell the judge you can consider what your friend says at lunch, you just can't consider police reports, because Olivas-Mata is in great shape. In this case, yes. But I think a lot of this case really goes to the issue of is the Attorney General's decision in Silva-Trevino, is it permissible? Is it. . . Does it contravene congressional intent? Does it violate the plain language of the statute? And so for my purposes, you're exactly right, Your Honor. But Olivas. . . Silva-Trevino is going to extend to a lot of those other questions in the future. Let's hear from the government, and you've got 17 seconds. But we'll make sure you get a chance to respond. All right. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Greg Mack, counsel for the respondent to the Attorney General of the United States. Relying on the Attorney General's decision in matter of Silva-Trevino, the Board appropriately turned to the police reports to conclude the petitioner hadn't been convicted of a crime involving moral turpitude. I have, as you probably guessed, a problem with using police reports for this. It doesn't extend to using all extraneous information. The nature of a police report is that it's to explain to a policeman's superiors what the policeman did and to refresh the policeman's recollections when he has to testify, perhaps years later. It's usually gleaned from one-sided interviews with people at the scene or very shortly afterwards. And sometimes they blurt out the truth and lie later, and sometimes the policeman gets it wrong when he writes it down because he didn't understand enough context. All kinds of things can happen that make him wrong. Sometimes the worst criminal in the bunch goes to the cops first because he's sophisticated in the system, and tells a whole lot of lies that the cops believe because he came to them first. All kinds of things happen with police reports. And in this case, the sentence was so lenient, I can't quite believe it was as simple as the police report said. And I don't give a guy so little time for stabbing his wife in the stomach with a knife. Well, actually, what was involved here was shooting his stomach. Shooting him in the stomach with a shotgun.  After an argument, no less. But it's easier to shoot your wife by accident than to stab her by accident. And he claimed it was an accident. They were struggling. She pulls the gun and goes off by accident. I think that's an important point, Your Honor. Maybe. I remember a case I'm familiar with where the jury bought the defense argument, purportedly, that the dog did it by jumping off on the person who was holding the shotgun. The myriad ways in which crimes can be committed. But what the real defense was, was he deserved it. But I think as to Judge Fletcher's question, where do we get that information that it was an accident? It's from the defendant's, excuse me, the alien's own. Actually, I'm not interested in that question. I'm interested in the abstract question. And that is, do we apply the modified categorical approach when we're dealing with crimes of moral turpitude to determine what actually he was convicted of? Let me ask my question this way. We just were given Judge Barquette's decision in the 11th Circuit in Sanchez-Fajardo. If we agree with Judge Barquette, do you lose? If you agree with it, we lose. But, of course, the government doesn't believe that you should agree with the 11th Circuit or the 3rd Circuit in the Jean-Louis case, which the 11th Circuit builds on. I'm going to stay with this question. In other words, if we follow the 11th Circuit, that decides the question in front of us. If you so choose to follow the 11th Circuit, which we strongly disagree with, as well as we strongly disagree with the 3rd Circuit in the Jean-Louis case, which both cases. But I think my question was a yes or no question. If we follow the 11th Circuit, you lose. Yes. Got it. But, of course, the government disagrees with the 11th Circuit and the 3rd Circuit. I got that part, too. I just wanted to be clear about that. Would you be the only circuit that would say that the Board can consider police reports  No, you wouldn't, Your Honor. I believe the 7th Circuit agreed with the Attorney General's methodology in Silva-Trevino. So there's a circuit split already existing between the 3rd, the 11th, and the 7th. The 7th Circuit's decision in the Ali case. So if we can't remember, I don't know that decision. Was it about police reports? I can't recall if it was specifically about police reports, but it adopted and agreed with the Attorney General's use of the Silva-Trevino's going beyond the modified categorical and the categorical approaches. In all the other contexts involving the categorical and modified categorical approach, my recollection is that the case law has been that police reports cannot be considered. That's true. I believe that follows Shepard and Taylor, Your Honor. But I think what's interesting about this is it gets us back to sort of first principles and old assumptions. I think the concern in Taylor and Shepard is that it creates some sort of limiting principle or limiting instruction in the Armed Career Criminal Act context so that sentencing judges aren't involved in many trials or relitigating the facts or looking at police reports and figuring out whether the police were accurate, as well as the administrative burdens that would befall upon sentencing judges and looking at acts outside of the record of conviction. And so what Taylor and Shepard say is focus on the elements, sentencing judge. Focus on judicially admissible documents such as the record of conviction, and that's where we're going to draw the line. I think as the Seventh Circuit indicated in Malik's case, that's not a seamless transition into the immigration context, because certainly in the immigration context. I mean, are you saying that we don't apply modified categorical in Taylor and so on in immigration cases? No, I'm saying that you do. Yeah, we do. And the Attorney General didn't disagree with that. The Attorney General said it's a three-step process. But he just says crimes involving moral turpitude is a different category of crime, and that's an exception to our ordinary rule. Not an exception. He says we don't stop at the categorical and modify categorical approach. We can go to this sort of extrinsic evidence approach. Well, you can call it an exception or not exception. He says we follow the categorical, modified categorical approach in all crimes except crimes involving moral turpitude. Well, he says you can go through the categorical and modify categorical approaches. If it's inconclusive at that point, we can move on and not just stop at the Taylor-Shepard approach. I think that's what I just said. We don't stop at just the Taylor-Shepard approach. And so what's different about a crime involving moral turpitude compared to, I don't know, burglary? Crime involving a moral turpitude isn't defined in the Immigration and Nationality Act. There's no – But neither is burglary. It's not, but burglar also exists outside of the Immigration and Nationality Act. Burglary has a definition in state and federal penal codes. It doesn't necessarily have a definition in the Immigration and Nationality Act. And what's different is a crime involving moral turpitude doesn't necessarily map to a specific state or federal penal code. Let me ask it this way. And I think this is an analytic way of getting at it. Is crime involving moral turpitude a categorical description such that there are certain crimes that are crimes of moral turpitude and other crimes that are not crimes of moral turpitude?  I agree with that. There are certain – And so we've got a list of crimes that are crimes of moral turpitude, and we've got a list of crimes that are not crimes of moral turpitude, right? Right. And what we have to figure out is – No, wait a minute. Okay, and now I'm on my list. This is a crime of moral turpitude, and the crime might be sexual abuse of a minor child, or it might be fraud. Both of those, I just happen to know, are on the list. So I now have – I've been – this guy's been convicted of a crime of sexual molestation of a small child. And are you telling me that I can look at the police report? I'm saying you can look at the police report in this particular case because – No, no, in the case that I'm talking about, not the case in front of us, the case I'm talking about. Yes, you can if the categorical approach and the modified categorical approach does not answer whether that sexual abuse of a minor is a crime involving moral turpitude. But you've already told me that it's a crime involving moral turpitude. It's on the list of crimes involving moral turpitude. But how do we create the list? It's an offense against a female under the age of 18, and that's all the person was convicted of. Can you use the police report to determine whether the victim was under the age of 12? Under the attorney general's approach in Silva-Trevino, if the categorical approach and the modified categorical approach doesn't answer that question, it's inconclusive on that question, the attorney general says in Silva-Trevino you can move to this looking at the extrinsic evidence. We're deciding whether Silva-Trevino is okay. That's right. And here the attorney general says you can look to that third step, the extrinsic evidence step, after the categorical and modified – What if the mother told the policeman, my daughter is 12 years old, and the policeman wrote that in his report. There's no other proof. That's sufficient? I'm sorry. Part of the question was we're talking to Judge Fletcher. Is the mother the defendant in that case? No. No. I would say the attorney general would say that would not be necessary and appropriate, as he said in the Silva-Trevino case. He said you can only get to this third step if it's necessary and appropriate. And certainly in this particular case you have before you, we have the defendant's or the alien's admission to the police station. It sounds like if the crime might be a crime of moral turpitude or not, like sex with a minor. It is if the minor is young enough, but it isn't if the minor is close enough to age 18, as I recall the authority now. You're saying you can use the police report to determine the minor's age. Yes. If after the categorical approach and the modified categorical approach produces an inconclusive result as to the age question, what Silva-Trevino says is we can move through the categorical and modified categorical approach because the same concerns we have with Taylor and Shepard don't apply in the immigration context, but with that limiting principle in Silva-Trevino, but that you only do it when it's necessary and appropriate. But you just made me nervous again. You said they don't apply in the immigration context, which suggests that you've got your principle that goes well beyond crimes involving moral turpitude. Well, what I said was it's not a seamless transition to use Taylor and Shepard in the immigration context, and Silva-Trevino accepts the categorical and modified categorical approach, but if they prove inconclusive in determining whether it's a crime involving moral turpitude, the Attorney General says we can go to this extra step in looking at extrinsic evidence. So I'm not saying that we wipe away Taylor and Shepard or that we wipe away the categorical and modified categorical approach. I think what the Seventh Circuit said in Ali is we don't have those same Taylor and Shepard concerns in the immigration context, and so that it's fine to move past. Why don't you? I mean, the police report might very well say the defendant told me he thought the girl was 17 or 18 and at least 16, and the girl said she was 14. I think our current authority is that 16 is the dividing line. I can't remember for sure. So you've got a conflict in the police report. I don't have the same problems that arise in other contexts. You don't have the same problem in the immigration context because you don't have a Sixth Amendment concern. You don't have an apprentice concern that the defendant have the ability to rebut the evidence in the police report. And certainly in this particular case, you have the alien's own admission. It's not a third party's statement with respect to whether it was a crime involving moral turpitude. We have what the policeman wrote down was the alien's admission. Yes, Your Honor, and we have his plea to this particular offense. The alien said this was an accident. It comes up all the time in trials. No, that's not what I told the policeman. And he had an opportunity to rebut that before the sentencing judge, and he didn't. And I put a footnote in our brief that this record of conviction, these statements, were part of the pre-sentencing statements to the judge here. But back to my point about why it doesn't transfer over and why we don't have the same concerns, there isn't a Sixth Amendment concern in the immigration context. There isn't an apprentice concern in the immigration context, as the Seventh Circuit said in the Ali decision. So that's why the attorney general said we can move past strictly being straightjacketed by the categorical and modified categorical approach because crime involving moral turpitude is different. Now, there's been reference to the term convicted, and that should lead us to strictly looking at the elements of the offense. But Nijuan had the same concern. Nijuan said you had to be convicted of an aggravated felony, and even in Nijuan, the Supreme Court said we're not straightjacketed strictly by the categorical and modified categorical approach. We can look at the circumstance-specific interest in that particular case. So even in Nijuan, the Supreme Court departed strictly from the categorical and modified categorical approach. The Supreme Court in Nijuan said that's it. All that exists in the world is the categorical and modified categorical approach, and we can't move to a certain sense of the situation. I suspect this question is going to come out of left field for both of you because neither of you cited the case. Why doesn't our decision in Padilla-Padilla answer the question? We've already applied the modified categorical approach to a crime involving moral turpitude. I wrote the opinion. It doesn't apply because I suspect Padilla-Padilla was issued before the Attorney General issued his decision. Well, that's right, but we already did it. I mean, he can do what he wants, but we've already said what our law is, and if we tell the BIA what the law is, that's the end of it. Well, we would argue, Your Honor, this is an ambiguous term in the Immigration and Nationality Act, and under Brand X, the Attorney General can reinterpret that provision even after this Court has interpreted it. So Brand X says the Attorney General can change his mind with respect to an ambiguous statement, and that would control it if this Court so decided to defer to it. We had an en banc about that, whether crime involving moral turpitude is sufficiently ambiguous so that we have to defer to the Attorney General. I can't remember the name of our en banc. It may have been Marmolejos Campos. I remember it was about stat rape, and I remember that that was what our issue was, but I can't remember our resolution. I think you resolved it by saying at step one, in terms of figuring out whether the elements equal crime involving moral turpitude, that's the courts of Providence-Denobo. But once the Attorney General says these particular set of elements or facts involve crime involving moral turpitude, this Court defers to the Attorney General in figuring out whether crime involving moral turpitude maps to this particular conviction. So that was a little bit of a different case. But I think in the cases before the Attorney General's decision in matters of Silva-Trevino, this Court has spoken and lamented the fact that it's an ambiguous term. It's not defined. How do we figure out what's a crime involving moral turpitude and what the Attorney General has done in Silva-Trevino? Well, it used to just mean sex or dishonesty, and then it got expanded to things like drunk driving and who knows what. And it goes on and on in terms of figuring out in each new case, at least I know when I brief CIMT cases, I sort of figure out, well, what are the current moral standards? How do we figure out what is a CIMT? And this Court has lamented the fact that the Board had not spoken or defined what's a crime involving moral turpitude and what the Attorney General has done in this decision. You know, here's my problem with this line of analysis, or I'll say it this way. We know that what constitutes a crime of moral turpitude is often difficult to say. We've got a list. We know that, for example, monetary fraud is. We know that sexual abuse of a small child is. But then there's some boundary cases, and we're not sure. But once we've decided what the crime of moral turpitude is, the question is, was this person convicted of the crime of moral turpitude? So once we've defined what it is, then we've got to decide whether he did it. And in deciding whether he did it, what sources do we look to if the statute of conviction is broader than the crime of moral turpitude? That's where we use a modified categorical approach. Correct, Your Honor, and that was the state of the law before matters of Silva-Trevino. I see no reason to depart from it. Well, we would urge the Court to depart from it because the Attorney General has interpreted an ambiguous term in the Immigration and Nationality Act by coming up with a methodology with respect to saying, beyond the categorical approach and beyond modified categorical approach, we can look at the extrinsic evidence, Your Honors. Okay. Thank you very much. Thank you. Would you like one minute? Very briefly, Your Honors. On the issue of ambiguity and the Seventh Circuit's decision in Ali v. Mukasey, what happened in that case was it was issued about a year or so, I believe, before Silva-Trevino came out. And in that case, basically the judge conflated this issue that you were just talking about, what is the substantive definition of a CIMT versus what is the methodology. And so the Seventh Circuit said, well, we defer to the agency when it comes to CIMTs, and so if they say we can do this, we're going to do this. And the problem is that then a year later, this Court came out with Marmolejo-Campos, which distinguished those two questions and said, yes, we defer to the agency on the substantive definition of a CIMT, but on the issue of what's the methodology and how we consider whether a person has been convicted of a crime involving moral turpitude, that is not anything that the agency has deference on. We review that de novo. So in other words, in Marmolejo-Campos, this Court on an en banc panel has already rejected the reasoning of Ali v. Mukasey. Therefore, the only three cases that are left are cases that have held that Silva-Trevino is not. And Ali was written by a judge who writes his own opinions, and it's an object lesson why a judge should never write his own opinions. I'll stay out of that one. He should have let his law class do it. Not all of us agree. One other point I want to bring up is that this idea of a seamless transition between Taylor and immigration proceedings, courts have held for nearly a century that the categorical approach applies in immigration proceedings and that not only does it apply, but you stop after the modified categorical approach. So we're not dependent here on Taylor and Shepard because this is case law that has been all along. Last point. A CIMT is not defined in the statute. The same thing happened with child abuse, with illicit trafficking. You have other terms in the INA that aren't defined, but that doesn't mean we defer to the agency on the methodology. I'll end there. Thank you very much. Thank you both for your vigorous arguments. The case of Olivas-Mata v. Holder is submitted, and we are now in adjournment for the day. Thank you very much. All rise. This court for discussion stands adjourned. Thank you very much. Let's see. There's actually a stack here. Are we ready to go? Do you want to grab this? Here, I'll show you. Okay. Okay. All right.
judges: Hug, Kleinfeld, Fletcher